**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| **Plaintiff/Respondent,** | ) | | |
| | ) | | |
| **vs.** | ) | **Case No.** | **07-4127- JAR** |
| | ) | | **02-40154-02-JAR** |
| **RANDALL DERWIN TERRELL,** | ) | | |
| | ) | | |
| **Defendant/Petitioner.** | ) | | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on petitioner Randall Derwin Terrell's Motion under 28

U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Doc.

215), as amended (Doc. 216) and supplemented (Doc. 217). In his motion, Terrell seeks relief

on the grounds that he was denied effective assistance of counsel. The government has

responded (Doc. 227), and on July 29, 2010, the Court conducted an evidentiary hearing. The

Court grants Terrell's motion to amend and, after a careful review of the record, the arguments

and the evidence presented, denies Terrell's § 2255 motion, as more fully described below.

**I.      Factual Background**

On December 30, 2002, Terrell and co-defendant Murnia Vercher were indicted on two

counts, possession with the intent to distribute cocaine (Count One) and conspiracy to possess

with the intent to distribute cocaine (Count Two). The Court granted defendants' motion to

suppress, but its order was reversed by the Tenth Circuit on February 24, 2004.[1]  On June 16,

_____

[1]*United States v. Vercher*, 358 F.3d 1257 (10th Cir. 2004).

2004, a Superseding Indictment was filed expanding the dates of the conspiracy charge from one day to two years; the Superseding Indictment was unsealed on August 17, 2004.[2]  On August 16, 2004, co-defendant Vercher entered a plea of guilty to one count of conspiracy as charged in the original Indictment and was subsequently sentenced to 70 months' imprisonment.

Terrell was represented by appointed counsel, Michael M. Jackson.  Following a jury trial, he was convicted as charged on February 16, 2005.  The jury specifically found that the offense conduct involved 5 kilograms or more of cocaine with respect to Count Two, and 500 grams or more but less than 5 kilograms of cocaine with respect to Count One.[3]

In the Presentence Investigation Report ("PSIR"), the probation officer determined that Terrell's base offense level, and ultimately his total offense level, was 36 in light of the quantity of cocaine attributable to him and the fact that no adjustments were warranted in Terrell's case.[4] The total amount of cocaine attributed to Terrell was 88.979 kilograms of cocaine, based on testimony of Anthony Harvey at trial that co-defendant Vercher began transporting five to seven kilograms of cocaine every week to Harvey from the middle of 2002 until defendants' arrest in November 2002, or seventeen weeks. The probation officer attributed a total of 85 kilograms of cocaine based on Harvey's testimony, plus the amount of cocaine seized from the vehicle during the traffic stop.[5]  Terrell was not entitled to a reduction for acceptance of responsibility because during the jury trial, he testified, and denied any knowledge of the controlled substances, any

---

[2](Doc. 101.)

[3](Doc. 164.)

[4](PSIR ¶¶ 33, 43.)

[5](PSIR ¶¶ 24-26.)

criminal intent in transporting controlled substances and any participation and/or involvement in the offense.[6]  Terrell's criminal history category was calculated at III.[7]  The applicable guidelines range was 235 to 293 months' imprisonment.

Jackson raised several objections to the PSIR, arguing that his client should receive a minor role adjustment, that his criminal history category should be calculated at I, and that he should receive the benefit of the "safety valve" provision.  The Court overruled the objection with respect to role in the offense and sustained Terrell's objections with respect to his criminal history, reducing it to category I.  Terrell withdrew his objection that he was eligible for the safety valve provisions of the guidelines, that would reduce his offense level under U.S.S.G. § 2D1.1(b)(6) by an additional two (2) points.  The Court stated that even with a criminal history category of I, Terrell would not be eligible for the safety valve provisions pursuant to U.S.S.G. § 5C1.2 because he had not truthfully provided to the government all information and evidence he had concerning the offenses that were part of the course of conduct or common scheme or plan.  Jackson contended that Terrell should receive a sentence below the guidelines range, citing several factors under 18 U.S.C. § 3553(a).  The Court sentenced Terrell to a term of 180 months' imprisonment, which was below the adjusted guidelines range of 188 to 235 months.[8]

On August 11, 2006, the Tenth Circuit affirmed Terrell's conviction and sentence.[9]  The United States Supreme Court denied Terrell's petition for writ of certiorari on December 11,

---

[6](PSIR ¶¶ 29, 30.)

[7](PSIR ¶ 53.)

[8](Doc. 181.)

[9]*See United States v. Terrell*, 191 F. App'x 728 (10th Cir. Aug. 11, 2006).

2006.[10]  The government agrees that Terrell filed the pending motion within the applicable statute of limitations.[11]

On July 29, 2010, the Court conducted an evidentiary hearing on Terrell's § 2555 motion.  The Court appointed Dionne Scherff to represent Terrell at the hearing.  The government was represented by Assistant United States Attorney James Brown of the United States Attorney's Office for the District of Kansas.  Testimony was given by Terrell, Jackson and Assistant United States Attorney Thomas Luedke, who prosecuted the case.  At the conclusion of the hearing, the parties indicated they would stand on the briefs as submitted, and the Court took the matter under advisement.

## II.     Discussion

Because Terrell's written submissions were filed *pro se*, his pleadings are to be construed liberally and not to the standard applied to an attorney's pleadings.[12]  If Terrell's motion can be reasonably read to state a valid claim on which he could prevail, the court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[13]  However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[14]  For that reason, the court shall not supply additional factual allegations to round out a

---

[10]*See Terrell v. United States*, 127 S. Ct. 842 (2006).

[11]*See* 28 U.S.C. § 2255, ¶ 6 (establishing a one-year limitations period running from the date on which the judgment of conviction becomes final).

[12]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13]*Id.*

[14]*Id.*

petitioner's claims or construct a legal theory on his behalf.[15]

Terrell alleges that his sentence should be vacated based on ineffective assistance of counsel during plea negotiations. Specifically, Terrell asserts that his counsel failed to inform him of all possible plea options to resolve his criminal case and entitle him to a more favorable sentence. Such a claim is judged under the familiar two-part test enunciated by the Supreme Court in *Strickland v. Washington*.[16] To satisfy that test, the petitioner must show (1) that his counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for the deficient performance of counsel, the outcome of the proceedings would have been different, thereby constituting prejudice to the petitioner.[17]

This standard applies specifically to a claim of ineffective assistance during failed plea negotiations.[18] With respect to the first prong of the *Strickland* test, "effective assistance of counsel includes counsel's informed opinion as to what pleas should be entered."[19] A court is to review a petitioner's ineffective assistance of counsel claim from the perspective of his counsel at the time he rendered the legal service, not in hindsight.[20] "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound

---

[15]*See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

[16]466 U.S. 668 (1984).

[17]*See id.* at 488-91.

[18]*See United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997).

[19]*Id.*

[20]*Fields v. Gibson*, 27 F.3d 1203, 1216 (10th Cir. 2002).

trial strategy."[21]

 "As for the prejudice prong, there must be a reasonable probability that but for incompetent counsel a defendant would have accepted the plea offer and pleaded guilty."[22]  The prejudice prong in the context of the plea process "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."[23]  Thus, a petitioner must demonstrate that, but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence, in this case, through the entry of a guilty plea.  A petitioner's "subjective and self-serving statements are insufficient to show a reasonable probability that, but for alleged counsel's errors, he would have pled guilty."[24]  The Tenth Circuit has indicated that a petitioner must produce objective evidence that he would have accepted the plea.[25]

In his motion, Terrell argues that counsel was constitutionally ineffective because he failed to inform Terrell about the possibility of accepting an "open" guilty plea arrangement,[26] which he contends would have resulted in a sentence of 108 months.  Terrell arrives at the 108-month figure by departing three points for acceptance of responsibility and two additional points for a safety valve departure from the total offense level of 36, criminal history category I

---

[21]*Id*. (citing *Strickland*, 466 U.S. at 689).

[22]*Id*. (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

[23]*Hill*, 474 U.S. at 58.

[24]*United States v. Morris*, 106 F. App'x 656, 658 (10th Cir. 2004).

[25]*See id*. at 658; *Maldonato v. Archuleta*, 61 F. App'x 524, 527 (10th Cir. 2004); *Bachicha v. Shanks*, 66 F.3d 338 (10th Cir. 1995).

[26]An "open" or "blind" guilty plea is a plea made by the defendant without the benefit of a plea agreement entered into with the government.  *See United States v. Navarro*, 476 F.3d 188, 189 (3d Cir. 2007).

calculation.[27]  He argues that Jackson's failure to advise him of this option or explain the overwhelming evidence against him caused him to stand trial and, ultimately, receive the 180-month sentence.  At the hearing, however, Terrell argued that he should have been permitted to enter an open plea to the original Indictment, in which the drug quantity was 3.979 kilograms of cocaine, which results in a base offense level of 30, with a guidelines range of 97-121 months for a criminal history category of I.  Under this scenario, Terrell's claim that he is entitled to a five-level reduction would result in a guidelines range of 57-71 months.

Terrell, Jackson and Luedke testified at the evidentiary hearing regarding the plea offer and how the decision not to accept came to pass.  Terrell testified that Jackson informed him over the telephone that the government had offered a plea agreement whereby, in exchange for pleading guilty and agreeing to testify against Vercher, the government would be willing to stipulate to a 70-month sentence.  Terrell testified that Jackson gave him a week to think about it, and told him there would be no more offers and that the government planned to supersede the Indictment if he declined.  Terrell testified he did not accept this offer because he did not want to testify against Vercher and claims that counsel never presented him with the option of an open plea whereby he would be eligible for a 108-month sentence without having to testify against his co-defendant, if he accepted responsibility and told the government about his part in the offense. Terrell expanded on the allegations in his motion at the hearing, testifying that Jackson never discussed the Sentencing Guidelines with him in connection with the plea offer, and that he had "no idea" of the possible sentence he was facing if he went to trial.  Terrell testified that he would have testified against Vercher if he had known the price of conviction, and that he did not

_____

[27](Doc. 217, at 7 n.4.)

want to proceed to trial. On cross-examination, however, Terrell admitted that he consistently told Jackson he had no knowledge of the cocaine, and that he denied knowledge of the drugs when he testified at trial, despite knowing prior to the start of trial that Anthony Harvey would testify. Terrell also admitted that his testimony was not always truthful at trial, having lied about knowledge of the drugs, how much money he was paid by Vercher and having played college basketball at Long Beach State and UCLA.

Jackson testified that prior to filing the Superseding Indictment, Luedke called to let him know that additional investigation was being conducted that likely would greatly increase the relevant conduct and possible penalties faced by Terrell, and extended an offer that if Terrell pled at that time, his relevant conduct would be limited to the information that the government had at the time the cocaine was found in the van. Jackson relayed the offer to Terrell, who later left Jackson a voicemail message stating that he was not interested in a deal with the government, that he had no knowledge of the drugs and that he had no information to provide regarding Vercher. Jackson explained his reasons for not pursuing additional plea offers with Terrell after he rejected the government's offer. Throughout his representation, Jackson testified, Terrell insisted that he was unaware of the presence of any cocaine in the van in which he was a passenger. Jackson testified that, due to Terrell's declarations of innocence, he was ethically compelled to proceed to trial and dispensed with any further guilty plea discussions with either Terrell or the government. If Terrell had exhibited any interest in pleading guilty, Jackson would have explored that option, but since he had no reason to do so, he invested his time in preparing for trial. Jackson testified that if a client maintains his innocence, he continues to explain the downside of going to trial. Jackson testified that he is familiar with the so-called

"open plea," and that he assumes he did not inform Terrell of that option. Jackson conceded that

even if Terrell had entered an open plea, relevant conduct would not have been frozen, nor

would he have been automatically eligible for the safety valve reduction. Jackson acknowledged

that Terrell testified on his own behalf at trial, where he continued to maintain his innocence and

denied any knowledge of the controlled substances, any criminal intent in transporting criminal

substances and any participation and/or involvement in the offense. Jackson testified that he did

not recall specific discussions with Terrell, nor did his case notes reflect any specific

conversations, but that it was his normal practice with clients to review the government's

evidence, and to discuss the Sentencing Guidelines and possible penalties, the consequences of a

superseding indictment and exposure if the case proceeded to trial.

   Luedke testified that he offered a plea agreement whereby, if Terrell provided substantial

assistance to the government and/or cooperated against Vercher, he would receive a reduction in

his sentence. Luedke confirmed Jackson's testimony that the government had discovered

additional information expanding the case against Vercher and Terrell, and that he advised both

defendants' counsel if they pled to the initial charges in the original Indictment, relevant conduct

would be limited to the amount of cocaine resulting from the traffic stop, since the government

had yet to investigate the additional evidence; if the government continued to investigate,

however, and more relevant conduct was developed, it would supersede and increase the

potential sentence significantly. Although Vercher accepted the plea offer, Terrell rejected it,

and the government obtained the Superseding Indictment after investigating the additional

allegations. When asked what he would have done if Jackson had rejected the initial offer, but

opted for an open plea agreement to the original Indictment, Luedke testified that he was not

sure whether the government would have continued the investigation to develop relevant conduct, but that Terrell would not have been eligible for certain guideline reductions under those circumstances. Specifically, Luedke testified that if Terrell had entered into an open plea, he would not have been eligible for the safety valve reduction, which requires a defendant to provide truthful and complete information regarding his co-conspirators. In this case, while the government believed Terrell had information about Vercher, Terrell had indicated that he did not want to share such information with the government. Luedke further explained that entering into an open plea does not automatically freeze relevant conduct, and that in any event, the United States Probation Office would have investigated additional relevant conduct. Moreover, Luedke testified, in order to get the acceptance of responsibility guideline reduction, a defendant must acknowledge his guilt, and Terrell maintained his innocence throughout the case.

### *Reasonableness*

Terrell cites the Third Circuit's decision in *United States v. Booth*[28] in support of his claim that Jackson's failure to inform him of an open plea option was constitutionally deficient. In that case, the government indicted defendant Booth on two counts—maliciously damaging by explosives property affecting interstate commerce[29] and possession of an unregistered firearm in the form of a bomb.[30] Prior to trial, Booth rejected the government's offer to plead guilty to one count of the indictment while a second count was dropped, and counter-offered to plead guilty to

---

[28]432 F.3d 542 (3d Cir. 2005).

[29]18 U.S.C. § 844(i).

[30]18 U.S.C. §§ 5841, 5861(d), and 5871.

the second count in exchange for dismissal of the first.[31]  The government would only accept the offer if Booth would proffer information regarding his own culpability as well as that of any other participants.[32]  Booth did not want to cooperate against anyone else involved, and the case proceeded to trial, after which he was found guilty of both charges.[33]  Booth moved to vacate his sentence pursuant to § 2255, arguing that counsel was ineffective because he did not inform Booth that he could have entered an open plea to both counts of the indictment, which likely would have entitled him to a three-level reduction for acceptance of responsibility.[34]  The district court denied the motion without holding an evidentiary hearing on the ground that Booth's trial counsel "adequately advised him of the consequences of his plea decisions because he fully informed Booth of all plea negotiations with the Government."[35]  The Third Circuit reversed, holding that "based upon the stage of the proceedings and the allegations in Booth's habeas petition, we must accept that Booth would have truthfully admitted the conduct comprising counts one and two and any additional relevant conduct."[36]  Accordingly, Booth "would have likely received a three-level reduction for acceptance of responsibility" and hence a lower sentence, had he chosen not to proceed to trial.[37]  There was no mention in counsel's affidavit of any discussion of the "open plea," and the court could not determine that the allegations in the

---

[31]*Booth*, 432 F.3d at 544.

[32]*Id.*

[33]*Id.*

[34]*Id.* at 548.

[35]*Id.* at 545.

[36]*Id.* at 548.

[37]*Id.*

§ 2255 motion conclusively barred Booth from showing *Strickland* prejudice, remanding for the district court to conduct an evidentiary hearing on the facts of the claim.[38]

The Third Circuit declined to extend its holding in *Booth* to *United States v. Gonzalez-Rivera,*[39] another § 2255 motion involving an open plea. That case, like this one, involved a defendant who was convicted after a jury trial of conspiracy to distribute cocaine and possession with intent to distribute cocaine, among other charges.[40] Like Terrell, Gonzalez-Rivera maintained his innocence throughout the proceedings.[41] Unlike this case, however, counsel informed Gonzalez-Rivera of all of his options: guilty plea with or without cooperation, or proceeding to trial.[42] The Third Circuit compared the facts to those in *Booth* and found counsel was not constitutionally ineffective, noting that defendant's assertion that he would have accepted a guilty plea was belied by the record evidence that he steadfastly maintained his innocence throughout the proceedings, and therefore he failed to prove prejudice.[43]

The record is clear on Terrell's claim that Jackson failed to advise him of the option to enter an open plea. Whether this failure results in constitutional deficiency is less clear. The government did not discuss *Booth* in its response and the Tenth Circuit has not addressed this particular issue. As the Third Circuit explained, "[t]he prejudice that resulted to Booth stemmed from his willingness to plead guilty to the charges, coupled with his counsel's failure to inform

---

[38]*Id.*

[39]217 F. App'x 166 (3d Cir. 2007).

[40]*Id.* at 167.

[41]*Id.* at 170.

[42]*Id.* at 169.

[43]*Id.* at 170.

him that he had an option of pleading open, which would have likely provided him with a three-level reduction for acceptance of responsibility without testifying against others."[44]  This case is distinguishable from *Booth* in that Booth had expressed a clear willingness to plead guilty, but for the fact that he would be required to cooperate.  Like in *Gonzalez-Rivera*, Terrell maintained his innocence throughout these proceedings, including at trial.  In *Gonzalez-Rivera*, however, defense counsel advised petitioner of the open plea option, and it was his refusal to consider a plea that resulted in his counsel's decision not to initiate further plea negotiations.  By contrast, Terrell was not presented with the open plea option.  Thus, it was Terrell's profession of innocence that resulted in Jackson's decision not to initiate further plea negotiations with the government, rather than his refusal to consider a plea.  Under these circumstances, the Court could find that Terrell has sufficiently alleged that counsel deprived him of the opportunity to make a reasonably informed decision regarding whether to change his plea or proceed to trial because counsel failed to advise him of a third option of entering an open plea.[45]  The Court does not make this determination, however, because even assuming Jackson's assistance was deficient, Terrell has failed to prove he was prejudiced.

### *Prejudice*

Terrell argues that he would have accepted an open plea agreement and that there is a reasonable probability that his sentence would have been more favorable had he pursued such an agreement.  The alleged prejudice that Terrell may have suffered as a result is far too speculative.  Terrell's self-serving contention that he would have accepted an open guilty plea is

---

[44]*Id.*

[45]*United States v. Booth*, 432 F.3d 542 (3d Cir. 2005).

belied by his steadfast denial of involvement in the drug conspiracy.  Terrell offers no objective evidence other than the disparity between his actual sentence and what he expected his exposure to be based on the alleged lack of information from Jackson.  The Court does not find credible Terrell's testimony that Jackson failed to inform him of the ramifications of rejecting the government's plea offer and proceeding to trial, particularly in light of the Superseding Indictment and prior notice of Harvey's testimony.

Furthermore, Terrell's argument with respect to a more favorable sentence is flawed.  First, Terrell's argument that he would have received a three-point reduction for acceptance of responsibility is speculative.  While it is likely that this Court would have allowed a two-point reduction under U.S.S.G. § 3E1.1(a), it does not seem likely that the one additional point would have been recommended by the government on the basis of an open plea, given the fact that co-defendant Vercher was cooperating and it would have been in a position to produce the same evidence on drug quantity at sentencing that it did at trial.[46]

Moreover, a showing of prejudice would require this Court to assume certain facts about what the government would have done had Terrell attempted to or actually entered an open guilty plea.  As Luedke's testimony at the hearing illustrated, Terrell's reduced sentence calculation is based on two unwarranted assumptions: (1) that the government would have acquiesced in his entry of such a plea when a Superseding Indictment was in the works; and (2) that his relevant conduct would have remained limited to the amount of drugs found in the van when he was stopped.

---

[46]The drug conspiracy charges in this case involve consideration of degrees of culpability or involvement where, even after a finding of guilt, the quantity and type of controlled substance has a major impact on sentencing.  By contrast, the charges in *Booth* were much simpler—defendant either did or did not damage the property in question with an "unregistered firearm."  *Booth*, 432 F.3d at 544.

Finally, Terrell was not eligible for the two-level safety valve reduction under § 5C1.2 because he was unwilling to provide information about co-defendant Vercher. Eligibility for the safety valve in this case would have been conditioned on Terrell's giving information about Vercher, because § 5C1.2(a)(5)'s requirement that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct[.]" Terrell's contention that he would have provided this information is self-serving and not credible. Indeed, the option of entering into an open plea was premised on Terrell avoiding what he now testifies he was more than willing to do—offer evidence against Vercher. Since an open plea would not require Terrell to provide this information, he would not have been eligible for the safety valve.[47] Because Terrell has failed to establish that he would have likely received a lower sentence but for his attorney's alleged ineffectiveness, he has not established prejudice and thus, his motion must be denied.

## III.    Certificate of Appealability

Effective December 1, 2009, Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[48] A petitioner may satisfy his burden only if "reasonable jurists would find the district court's assessment of the constitutional

---

[47]*See United States v. Acosta-Olivas*, 71 F.3d 375, 378 (10th Cir. 1995) (explaining "the guideline [§ 5C1.2(a)(5)] would therefore require disclosure of everything [defendant] knows about his own actions and those of his co-conspirators") (collecting cases).

[48]28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

claims debatable or wrong."[49]  Petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA.  He must, however, "prove something more than the absence of frivolity or the existence of mere good faith."[50]  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims.  In fact, the statute forbids it."[51]  For the reasons detailed in this Memorandum and Order, Terrell has not made a substantial showing of the denial of a constitutional right, and the Court denies a COA as to its ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that petitioner Randall Terrell's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 215), as amended, is DENIED.  The Court also denies Terrell a COA.

**IT IS SO ORDERED.**

Dated: October 12, 2010

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[49]*Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[50]*Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[51]*Id.* at 336; *see also United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005).